I'll call the next case. 3-17-0139, People of the State of Illinois, Appalooie, Justin Nicolosi v. McGale, Reynoso, McAllen, by Autumn Fincher. Before we begin, I'll let Ms. Schiffer, you can approach the bench, but before we begin, as you can tell, Justice Tom Litton is not with us today. He has left his family and is not able to be with us, but he is participating fully in the decision. He will have the tapes available to him, and we'll conference with Justice Wright and myself on the decision. With that, Ms. Fincher? Ms. Fincher, are you in a comfortable sitting? Oh, no, I'm fine. Okay. Thank you very much. Well, I've been there. Ms. Justice? I'll be uncomfortable anyway. Good afternoon, Your Honors. Again, my name is Autumn Renee Fincher, and I am of counsel with the Office of the State Appellate Defender, and I represent McGale, Reynoso, today. On appeal, we've raised two questions before this court. First, whether the judge relied on his own knowledge to find the duration of the stop was reasonable, and two, that counsel was incompetent for agreeing that McGale possessed fentanyl when it was cocaine that was found in his trunk. I'm happy to discuss any questions that Your Honors have regarding the first issue, but I would like to focus my argument on the second question today, which is how was McGale competently represented when his own attorney guaranteed his erroneous conviction by agreeing that McGale possessed fentanyl when it was cocaine that was found in his trunk? Basically, in any controlled substance case, the state has the burden of proving that what the defendant had is what he's charged with having. He must possess what he's charged with possessing. It's pretty simple. Here, the field test revealed that the substance that McGale possessed was cocaine, so McGale was charged with possessing cocaine. Then the evidence was sent to the lab. The lab test came back that McGale possessed fentanyl, or what was submitted to the lab was fentanyl. There's obviously a breakdown somewhere, because how did cocaine turn into fentanyl? The state on its own wouldn't have been able to answer this, because first, there was a drug dog that alerted. They can only alert to five substances, one of which is cocaine. He cannot alert to fentanyl. There was a field test that revealed that the substance was cocaine, nothing about fentanyl, but a lab test that came back positive for fentanyl, not cocaine. There were three drugs in the trunk? Yes. Did we know which drug was field tested and which drug was submitted to the lab? Was it the same drug? All three were submitted to the lab. They only tested one? But they only tested one to get to the threshold. Do we know whether they tested the one that was subject to the field test? That is not known on the record. There's no indication which one might have been tested in the lab versus the field, but that would have been for the trier of fact to determine. That would have been for the state to have proven that the discrepancy was reconcilable, because package A was tested in the lab and package C was the one that had been tested in the field, so they could be two different substances that Mikal possessed. That would have been for the trier of fact to decide. Unfortunately, because counsel stipulated, the state didn't have that burden of proving that to the trier of fact and resolved that question for the state. Because counsel not only stipulated that the substances were the same, he also stipulated there was a proper term of custody. There was no reason for counsel to do this. It wasn't like counsel didn't know there was a discrepancy. This isn't a question of whether the state withheld evidence. This isn't a question of, you know, is there a Brady claim? There was a lab report. The prosecutor was on record saying that there was a discrepancy. The prosecutor's state nollied the cocaine charge and recharged Mikal with fentanyl, possession of fentanyl. So the question has to be, what possibly could counsel's logic have been? Now, counsel is allowed to stipulate. Counsel is allowed to make discretionary choices like that, but those decisions must still be reasonable. We can ask ourselves whether or not counsel did advance a Fourth Amendment challenge prior to trial. Was counsel's focus on stipulating not only to the evidence, the chain of custody, but to all the facts at this stipulated bench trial? Was counsel's logic doing that just to preserve that Fourth Amendment challenge? That's not what it looks like on the record. Because right after counsel stipulated and right after his client was convicted, counsel conceded that the duration of the stop was reasonable. Counsel switched his argument to one that the state failed to prove that the recovered substance was the same as the tested substance, which was the exact evidence he had just stipulated to. This absolutely was not the time to do this. Counsel had at his disposal many different ways of challenging this evidence. He could have moved to dismiss the fentanyl charge. He could have objected to the state relying on that lab report. Counsel could have disputed the claim, the factual claim that Miguel had fentanyl in the trunk. Or most obviously, counsel could have not stipulated. It's apparent with the post-trial arguments that counsel had a problem with the state's evidence. But then why did he stipulate? Counsel didn't realize that by stipulating the chain of custody, he would render any challenge after the fact moot. This can't be a trial. This isn't trial strategy. This is incompetent representation. It was a mistake that cost Miguel his freedom because the state, without the stipulation, there's a reasonable probability that the state wouldn't have been able to prove its case against Miguel that what he actually had, a basic element of charge, was that what he possessed was fentanyl. Again, going through the evidence, the dog that alerted was not trained to detect fentanyl, but trained to detect cocaine. The field test came back positive for cocaine. The lab report came back positive for fentanyl. There are other problems with the state's evidence as well. The descriptions didn't match because the lab report had no description of the evidence, which is, again, another reason why we don't know which package was tested. But counsel took the burden of the state to prove that that's how the discrepancy occurred. There's also an 18-day delay between when the evidence was recovered from Miguel's trunk and the day the evidence was submitted to the lab. Another question we have to ask ourselves is, couldn't it just be said that this whole breakdown could have been resolved by bringing the forensic scientist in to testify? But that's not the question that's on appeal. That's not the question for this court. It isn't what the state could have done to resolve the discrepancy, but rather what counsel should have done to require the state to resolve that discrepancy. Counsel made this discrepancy kind of go away by resolving it through his stipulation. And because there's a reasonable probability that without the stipulation, Miguel would have been acquitted of the charged offense. Miguel should be given a new trial. Now, the state's argument, I know we're going to hear from the state in just a moment, but I'd like to touch briefly on their written response and their response to our opening brief. First of all, the state gave little substantive response to our position. Basically, it was just a blanket claim that, in effect, the counsel arguments are improper on direct appeal. The state, in its written response, did note that the Illinois Supreme Court has cautioned against out of hand dismissals of IAC claims on direct appeal, but it appeared from the state's brief that the state wishes this court to do exactly that. The state argued that the record was incomplete, basically because counsel did not get up and say, the reason I stipulated was just because I didn't understand the law. But it's apparent from the record that counsel stipulated because he didn't understand the law. This court can and should connect the dots to see that counsel didn't understand that he couldn't challenge evidence he had just stipulated to. And to sum up quickly, counsel made a mistake. This wasn't a trial strategy that was just nearly unsuccessful. This was an egregious error, and it was an error that cost Miguel his freedom. Counsel didn't understand the consequence of his stipulation, so we're asking this court to give Miguel the opportunity to be represented by competent counsel and to hold the state to its burden at a new trial. Was it the same defense attorney that conducted the motion to suppress? It was. Thank you. Thank you, Mr. Chairman. Mr. Nicolosi for apply. Thank you, Your Honors. Good afternoon. May it please the court, counsel. Your Honors, just as the defendant did, I will keep my remarks within Issue 2. If there are any questions about Issue 1, I'd be happy to answer those as well. Counsel just remarked that the state kind of took a blanket position, arguing that this instant appeal is not the proper forum for this particular discussion, this particular ineffective assistance claim. And I wrote in my brief, counsel mentioned as well that the Supreme Court in 2017 talked about how there should be a blanket rule about sending ineffective assistance of claims from direct appeals, always sending them back to go via collateral relief post-conviction petition. But, of course, the people submit that that case establishes that that is still an option. If the case and the facts aren't fit for a discussion on direct appeal, they can be remanded or they can be sent back for that particular, for the defendant to have an option to go that route. The state submits this is one of those cases. This is a prototype case for the proposition that cases with inadequate and incomplete records regarding the ineffective assistance issues should not be handled on direct appeal. The state submits that this record on appeal right now is inadequate and incomplete for the discussion of whether counsel was ineffective for stipulating to the chain of custody and defining that the drugs were fentanyl. As a matter of trial strategy, usually the first questions we ask in a situation like this, what would be a reasonable trial strategy to stipulate to a lab report that indicates a drug that appears to not be the drug that was removed from the vehicle? Well, Your Honor, I think you just hit on an important point that the field test came back for cocaine. That doesn't mean that there wasn't fentanyl in the car. And the fact that the canine alerted, and as counsel was correct, that the dog was not trained to detect fentanyl. But the fact is there could have been two drugs in this car. There could have been more than one drug. It's as simple as that. And just because the dog alerted and the field test came back positive for cocaine, that was an awkward phrasing, but it doesn't mean that fentanyl wasn't in the car and that the product that was taken from the car and sent to the lab wasn't the substance found in the defendant's car. None of that points to that conclusion. As you're opposing counsel arguing, we don't know which drug was tested in the lab. No. But I'm wondering if it was developed in a post-conviction petition, maybe the judge would find out that it was a different drug that was tested in the lab. And defense counsel might have known that. We don't know. And you're exactly right, Justice. You're correct, Justice Wright. And that's what I argued in my brief, that to get to the conclusions the defendant wants us to reach on direct appeal calls for a lot of speculation. The fact is, if this went to an evidentiary hearing, let's just say the defendant files a PC, it gets through the first two stages. We have an evidentiary hearing. We call counsel. Let's start there. We call counsel. Counsel will tell us what he or she, I don't remember if it's a female or male counsel, what counsel knew at the time counsel stipulated. Wasn't there a superseding indictment? The first indictment was for cocaine. Sure. And then the superseding indictment eliminated the charge for cocaine and only charged him. Yes. Which seems to at least cast doubt on the theory that there was other, that there was also cocaine. Your Honor, you're correct. But the fact remains that the defendant went to trial only charged with the possession of fentanyl. And the people presented in their, the facts that were stipulated to them, that they would have presented a lab technician who would have established, to a reasonable degree of scientific certainty, that the substance tested was fentanyl. That's all they had to prove. All that was, all that remained was a fentanyl charge. The state got rid of the cocaine charge. We don't know why. We don't know why. We don't know if there was how much cocaine. We don't know if the state knew. We don't know. Again, the fact that we don't know the answer to these questions highlights the inadequacy of this record. Well, I don't, but I still don't know if that answers the question of what would be reasonable to, I mean, even if you say, well, the state might have, he might have known the state had cocaine. I mean, even if that is the case, I don't know what the reasonable strategy would be to say, let's accept something that appears not, I mean, on what is on, I mean, why would you say we're not going to have you bring us cocaine? We're going to just agree to this. I mean, because you can assess, what would be a reasonable trial strategy for doing that? I don't know if this is the stage for hypotheticals, Your Honor. This could have gone through the procedure where we don't have to, we wouldn't have to guess. We wouldn't have to speculate. We could just ask the defense counsel because he or she would have gotten on the stand during an evidentiary hearing. Isn't that the way, instead of guessing and speculating and asking hypotheticals what the strategy would be, I think the fact is that we're tasked to decide this case on this record, and I don't believe we can do it. Because we're just guessing what counsel did and why he or she did it. He could have known that there was a chain of custody that the state could have established. He could have researched it. He even said that the fact that the state changed the charges from cocaine to fentanyl. I understand what you're saying, but I think what the Supreme Court is saying is that you don't throw these cases back every time. You know, not every time do they have to wait for collateral review. If you have enough evidence in the record to make a determination to do so, I don't think there's ever a circumstance or very rarely when every single thing is going to be in the record that determines a breach or their responsibility for effective assistance. So, I mean, there's more in this record than in many. So you're saying unless it's absolutely certain that we have to send it back and have it be brought up on collateral review? I'm not saying absolutely certain. I'm just saying we have nothing to determine what counsel was thinking. I disagree, Your Honor. I don't think there's anything in this record that says what counsel was thinking. There's nothing. Because nobody ever asked him the question. Sure, he filed some post-trial motions. The 18-day delay and the chain of custody. Why would any defense attorney stipulate to the proper chain of custody? What would be the strategic reason to do that? Well, Your Honor, what if he knew that there was a proper chain of custody? Why would he waste the court's time? Why would he waste everyone's time? Why would he waste his defendant's time and put up a facade when he knew that there was nothing there? That doesn't make any sense. And the fact that he's filed some post-trial motions arguing the chain of custody and all this other stuff, he literally had no choice at that point. He may have had nothing to stand on. He may have had nothing to stand on on those motions, but he just filed them because, oh, I realize I screwed up. Let me just file this motion. But, again, I'm just spitballing because that's the record we have. All we can do is spitball. We don't really know. We don't know what he was thinking. We don't know why he stipulated. We don't know why he filed his motions. We don't know what he knew, and that's the problem with this record. And that's why the state submits it. This direct appeal is not the proper form for this ineffective assistance claim, and the people would ask that this court affirm the rulings below. If there are any other questions, I'd be happy to answer them. Is there any more questions? Thank you. Thank you. Ms. Fincher? The state, again, argues that this case is not right for adjudication before this court. But there's another issue. Yes. Yes, I'm sorry. This issue is not right for adjudication before this court. The other one is the record is complete. And, you know, basically argues that we're engaging in speculation because we don't know what counsel would have known. And the question isn't what counsel was thinking. It's whether or not his strategy was objectively reasonable. So we don't need to have counsel. Yes, at an evidentiary hearing, a third stage, we would be able to ask counsel, you know, what was your strategy? But here the question is whether or not it was objectively reasonable. We have all the facts to see that it was objectively unreasonable. There is no reasonable trial strategy to go ahead and stipulate to a discrepancy between cocaine and fentanyl. And just because counsel, you know, opposing counsel mentioned today that, you know, maybe he was preserving the Fourth Amendment challenge or maybe he didn't want to waste the state's time, you know, the court's time. But counsel still has a duty to raise defenses that are available to him. And that was discussed in the Miramontes case that is cited, the First District case that is cited in the reply brief, where counsel has a duty still to raise a defense that doesn't necessarily conflict with his defense. Preserving the Fourth Amendment challenge, this would not have conflicted with that challenge. That question at the Fourth Amendment challenge was whether or not the duration of that stop was reasonable under Rodriguez. This question is whether or not the state could prove that what he possessed was fentanyl. It's our position that if this were a case that would fall under, you know, the reverse of each decision, you know, one of the categorical dismissals of an IAC claim, I think that Miguel would be tracking that proverbial catch-22, where very easily a circuit court could come back and say, you know, the facts that we need to resolve this question of counsel's competency are on the record before you. We don't need to hear, you know, this isn't a case where it involves a conversation between the defendant and defense counsel. You know, this isn't a question of whether or not counsel performed an adequate investigation, factual investigation. It's whether or not counsel knew the law. And it's apparent from the record that counsel did not know the law because he challenged the very evidence that he stipulated to moments earlier. And that is objectively unreasonable. And it's exactly what the Illinois Supreme Court in Veatch wanted to avoid, to have these clients, these, I mean, sorry, these defendants be barred from raising their claims, you know, dismissed in the appellate court on direct appeal, and then barred at the circuit court level because, on the record, it should have been raised on direct appeal, and it was forfeited. And, again, counsel's post-trial argument shows that he didn't understand, that counsel didn't understand that by stipulating, he absolved the seat of its burden. To demonstrate the evidence that was recovered was the evidence tested. And for that reason, we raised this argument on direct appeal, and we asked that this court on appeal grant Miguel a new trial. Were there closing arguments by defense counsel after the stipulated bench trial? If you don't know the answer, I can check the record. I'm not sure of that off the top of my head. Because I'm struggling a little bit with, the stipulation doesn't say that the test was accurate at the lab, only that it was tested, and it tested as fentanyl. So the fentanyl test could have been, counsel could argue it's inaccurate, and it conflicts with the cocaine sniff by the dog. Had there been a jury there, maybe that's enough for reasonable doubt. So I'm wondering what defense counsel did with those facts, and whether he constructed an argument that, okay, the test, one of those occurrences was inaccurate, and they can't both be true. Yes, I'm sorry, I don't know off the top of my head about closing argument, because it was a stipulated bench trial. There might not have been any. Yeah, I don't remember. I do remember in his post-trial, in his post-trial argument, counsel, bear with me, I'm sorry for the rest of it, because I know that he argued the defendant, this is in his post-trial motion, I believe, yes, this is the written motion, quote, the defendant here is charged with possession of intent to deliver fentanyl, which is not the substance seized from the defendant. And then counsel goes on to explain that the dog alerted on cocaine, which was confirmed by the field test, but then was charged with fentanyl after the lab results came back. Now, I do know that was in the post-trial motions, but I'm not sure what the record indicates. Thank you, counsel, and thank you for answering my question. I don't think there are any other questions. Well, thank you very much. And again, we ask that Miguel Reynoso be given a new opportunity to hold the state to its burden of proving that he could actually possess the substance he was charged with possessing. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And right now we'll take a brief recess for a panel session.